**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001344
18-SEP-2015
08:24 AM**

NO. CAAP-14-0001344

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF
JL

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 12-00235)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Appellant Mother (Mother) appeals from the Order Terminating Parental Rights, filed on November 24, 2014, in the Family Court of the First Circuit (family court).[1]

On appeal, Mother contends Petitioner-Appellee the State of Hawai'i, Department of Human Services (DHS) failed to provide her with a reasonable opportunity for reunification with her child, J.L., prior to terminating her parental rights. Specifically, Mother argues that DHS's service plan for Comprehensive Counseling and Support Services (CCSS) to provide parenting and home based services was not sufficient for Mother to parent J.L.; assuming the CCSS services were sufficient, DHS improperly terminated those services for Mother; DHS failed to provide J.L. with appropriate therapy for autism; and DHS failed to provide Mother and J.L. with the opportunity to participate in the ABC program for autistic children.

---

[1] The Honorable Bode A. Uale presided.

Mother challenges findings of fact (FOF) 47, 57, 58, 59, 69, 70, and 71 in the family court's "Findings of Fact and Conclusions of Law" filed on January 6, 2015.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows and affirm.

---

[2]   The FOFs that Mother challenges state:

47.    Mother participated in CCSS from August 30, 2013 until May 5, 2014, when CCSS services were terminated due to the assessment that Mother remained unable to implement parenting skills to care for the Child.

       . . . .

57.    Under the circumstances presented in this case, Mother was given every reasonable opportunity to effect positive changes to provide a safe family home and to reunify with the Child.

58.    Mother is not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan.

59.    It is not reasonably foreseeable that Mother will become willing and able to provide the Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the Child's date of entry into foster care.

       . . . .

69.    Under the circumstances presented by the instant case, the Department has exerted reasonable and active efforts to avoid foster placement of the Child.

70.    Under the circumstances presented by the instant case, the Department has exerted reasonable and active efforts to reunify the Child with Mother and Father by identifying necessary, appropriate, and reasonable services to address Mother's and Father's identified safety issues, and making appropriate and timely referrals for these services.  Under the circumstances presented by the instant case, the Department gave Mother and Father every reasonable opportunity to succeed in remedying the problems which put the Child at substantial risk of being harmed in the family home and to reunify with the Child.  The Department actively encouraged Mother and Father to participate in necessary and reasonable services to allow them to reunify with the Child.

71.    Each of the service plans offered by the Department and ordered by the Court were fair, appropriate, and comprehensive.

We apply the following standards with regard to Mother's points of error in this appeal:

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001) (block format altered)).

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (citations and block format omitted).

Hawaii Revised Statutes (HRS) § 587A-33 (Supp. 2014) provides, in relevant part:

> § 587A-33 Termination of parental rights hearing. (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;
>
> (3) The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:
>
> > (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

3

> (B)    Give greater weight to the
> presumption that the permanent plan
> is in the child's best interest, the
> younger the child is upon the
> child's date of entry into foster
> care[.]

The determinations under HRS § 587A-33 present mixed questions of fact and law and therefore are reviewed on appeal under the clearly erroneous standard. <u>Cf.</u> <u>In re Doe</u>, 95 Hawaiʻi at 190, 20 P.3d at 623 (addressing similar standards under a predecessor statute).

       With regard to Mother's points of error in this case, we conclude that the family court did not clearly err in its findings that DHS provided Mother with a reasonable opportunity to reunify with J.L. by specifying an appropriate service plan and providing services for Mother. Although Mother contends that the services provided to her were insufficient and/or improperly terminated, Richard Wong (Wong), the DHS case manager for this matter, testified at trial that Mother never informed him that the services provided to her were inadequate and she did not ask for any referral for services that he did not make. Mother does not point to any part of the record where she complained about the services provided to her or where she sought different or additional services.

> Manifestly, a claim for additional services and accommodations must be timely made. While it could be argued that Mother was hampered in asking for assistance because of her mental condition, we note that Mother was represented by counsel, who could have notified DHS on Mother's behalf. No request, however, was ever made until trial. Under such circumstances, we cannot hold that Mother has any cognizable procedural complaint.

<u>In re Doe</u>, 100 Hawaiʻi 335, 344, 60 P.3d 285, 294 (2002). In this case, Mother has been represented by counsel.

       Even considering the specifics of the issues Mother raises on appeal, the family court did not clearly err. J.L. is an autistic child with special needs. In DHS's Petition for Foster Custody, it alleged that J.L. was first taken into DHS custody when he was found with unexplained injuries to different parts of his body and injuries in different stages of healing. At that time, J.L. resided with his maternal grandmother

(Grandmother) and his maternal uncle (Uncle). According to the Petition for Foster Custody, Uncle admitted to hitting J.L. with a hanger, causing a laceration, and to pinching J.L.'s inner thighs, causing bruising, as Uncle was frustrated with J.L.'s behavior. DHS asserted that J.L. requires constant supervision, is at risk for wandering, has minimal verbal communication skills, and that Uncle lacks the skill and patience to care for him.

The Petition for Foster Custody also asserted that:

> e. Mother lacks the knowledge, skill or motivation to parent due to her inability to address the safety issues as [J.L.] has multiple special needs. Due to [J.L.'s] special needs, the child requires 24-hour supervision. . . .

> f. Mother had unresolved mental health issues and current protective factors were not in place to ensure [J.L.'s] safety. Mother has agreed to participate in DHS recommended services.

We also note the following findings by the family court which have not been challenged and are therefore binding on this court:

> 38. [J.L.] did not exhibit the violent or disruptive behavior at school or in the resource home that he exhibited during the visits with Mother due to the structure provided by the school and resource home environments.

> 39. [J.L.] has needs that require significantly more skills than those of an average child's needs. . . .

> . . . .

> 43. Mother has a chronic history of mental health problems. . . .

> . . . .

> 49. Mother lacks insight into her own mental health needs and the special needs of [J.L.], which is a threat of harm to [J.L.].

DHS referred Mother, *inter alia*, for services with CCSS, to include outreach parenting education during visitations with J.L. and counseling/outreach after the visitations. The visitation sessions, approximately once a week, occurred during supervised visits between August 2013 and May 2014. During these visits, Mother was provided hands on parenting instruction and counseling on how to handle J.L.'s behavior. However, the closing report by CCSS reflects concern about Mother's ability to

handle both J.L.'s needs and the needs of Mother's younger daughter, who resides with her. The closing report states that Mother's CCSS case was closed in May 2014 because "she was not making marked progress towards reunification or able to utilize the feedback to demonstrate changes in her parenting skills." This report also summarized that "the CWS Social Worker consented that CCSS close this case in May due to having no imminent reunification date and no evidence of forward progress or change in the client's parenting skills or attitude."

A Family Counselor from CCSS who worked on Mother's case, Ursula Steffany (Steffany), testified at trial that she did not feel that there was anything within her services that she could have done differently that would have been more helpful. Steffany indicated that an underlying challenge in this case was the need for acknowledgment that "my son is special needs" and "he's going to need more of me[.]" As Mother points out, Steffany testified that Mother's services were terminated because by April 2014 imminent reunification was no longer the goal of the service plan. However, Mother's termination from CCSS was not improper because, as reflected in the CCSS closing report, Mother had shown minimal progress with the services provided to her by CCSS and on March 25, 2014, DHS filed a Motion to Establish a Permanent Plan which proposed that J.L. be placed in legal guardianship until he attained the age of majority.

DHS did not fail to ensure that J.L. had appropriate services and it did not fail to provide J.L. with therapy. Mother cites a comment by Cheryl Andaya, a psychologist who performed a psychological evaluation of Mother shortly before the hearing on the Motion to Terminate Parental Rights, as evidence that J.L. should have been provided therapy. Dr. Andaya stated that a caregiver would have to work closely with a child's therapist to appropriately address some behaviors exhibited by autistic children. Aside from failing to specify what behavior a therapist would address with J.L., Dr. Andaya also stated that not every child requires a therapist and that school specialists and skills trainers can assist a parent depending on the level of autism of the child. Dr. Andaya did not perform an evaluation

of J.L. and did not recommend that J.L. be provided a therapist. A Court Appointed Special Advocates Program volunteer testified that J.L.'s current disability was his speech for which a speech therapist is provided at school.

Mother also relies upon Steffany's testimony to argue that DHS failed to provide Mother and J.L. access to the ABC Program, a program in a classroom setting that taught theory. According to Steffany, it is a program that is self-referred to take. Mother supposedly contacted the ABC Program but did nothing more. In addition, Wong testified that the ABC Program was duplicative of services that J.L. was already receiving in school, *i.e.,* a one-on-one skills trainer in a classroom setting. Steffany also testified that the ABC Program would teach Mother theoretical knowledge but that Mother would benefit more from hands-on parenting education, which is the type of service that Steffany had provided. Similarly, Dr. Andaya also recommended that Mother receive hands-on parenting. Thus, the record indicates that the DHS service plan was appropriate in this case, even without participation in the ABC Program.

For the above reasons, Mother's points of error on appeal do not have merit and the family court did not clearly err in its FOFs 47, 57, 58, 59, 69, 70, and 71 in the "Findings of Fact and Conclusions of Law" filed on January 6, 2015.

Therefore, IT IS HEREBY ORDERED that the Order Terminating Parental Rights, filed on November 24, 2014, in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, September 18, 2015.

On the briefs:

Herbert Y. Yamada,
for Appellant-Mother.

Mary Anne Magnier,
Kurt Jamie Shimamoto,
Deputy Attorney General,
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge

7